UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NOKIA OF AMERICA CORPORATION**,<br><br>                              Plaintiff,<br><br>v.<br><br>**VOXLINE LLC**,<br><br>                              Defendant. | **Oral Argument and Immediate Hearing Requested** |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

I.   NOKIA IS LIKELY TO SUCCEED ON THE MERITS ...................................... 6

II.  NOKIA WILL BE IRREPARABLY INJURED IF VOXLINE IS NOT ORDERED TO RETURN THE NOKIA EQUIPMENT ........................................ 8

III. AN ORDER REQUIRING THE RETURN OF THE NOKIA EQUIPMENT WILL NOT HARM VOXLINE AND WOULD BENEFIT A THIRD PARTY, T-MOBILE. ................................................................................................................ 10

IV.  THE PUBLIC INTEREST WOULD BE SERVED BY THE IMMEDIATE RETURN OF THE NOKIA EQUIPMENT .......................................................... 12

CONCLUSION ................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*22nd Century Techs., Inc. v. iLabs, Inc.*,
  2022 U.S. Dist. LEXIS 48389 (D.N.J. Mar. 18, 2022) ..................................................................10

*ADP, LLC v. Jacobs*,
  2015 U.S. Dist. LEXIS 103207 (D.N.J. Aug. 5, 2015) ..................................................................13

*Allegheny Energy, Inc. v. DQE, Inc.*,
  171 F.3d 153 (3d Cir. 1999) .........................................................................................................10

*Bernstein v. Goldsmith*,
  2006 U.S. Dist. LEXIS 36599 (D.N.J. June 5, 2006) ...................................................................13

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*,
  773 F.3d 110 (2d Cir. 2014) ...........................................................................................................7

*Commodity Futures Trading Comm'n v. Walsh*,
  17 N.Y.3d 162 (2011) ...................................................................................................................12

*Complex Systems, Inc. v. ABN AMRO Bank, N.V.*,
  2014 U.S. Dist. LEXIS 64467 (S.D.N.Y. May 9, 2014) .................................................................9

*Dreisinger v. Teglasi*,
  130 A.D.3d 524 (N.Y. App. Div. 1st Dep't 2015) .........................................................................6

*EUSA Pharma (US), Inc. v. Innocoll Pharms. Ltd.*,
  594 F. Supp. 2d 570 (E.D. Pa. 2009) .............................................................................................9

*Flynn v. McGraw Hill LLC*,
  120 F.4th 1157 (2d Cir. 2024) ........................................................................................................7

*Great Caesars Ghost LLC v. Unachukwu*,
  2020 U.S. Dist. LEXIS 83115 (D.N.J. May 12, 2020) .................................................................13

*Green Stripe, Inc. v. Berny's Internacionale, S.A. de C.V.*,
  159 F. Supp. 2d 51 (E.D. Pa. 2001) ..........................................................................................9, 10

*HMS Holdings Corp. v. Arendt*,
  18 N.Y.S.3d 579 (Sup. Ct. 2015) .................................................................................................12

*Int'l Bhd. of Boilermakers v. Szoke*,
  1987 U.S. Dist. LEXIS 14208 (E.D. Pa. May 29, 1987) ........................................................11, 13

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)..................................................................................10, 11

*Leonard v. Hotel Majestic Co.*,
  40 N.Y.S. 1044 (Sup. Ct. 1896)..........................................................................................14

*Lockheed Martin Corp. v. Retail Holdings, N.V.*,
  639 F.3d 63 (2d Cir. 2011)....................................................................................................6

*Miller v. Mott (In re Team Sys. Int'l, LLC)*,
  2023 Bankr. LEXIS 229 (Bankr. D. Del. Jan. 31, 2023)...................................................13

*Millner v. Rochester Lumber Co.*,
  941 N.Y.S.2d 539 (Sup. Ct. 2007).....................................................................................13

*Minard Run Oil Co. v. U.S. Forest Serv.*,
  670 F.3d 236 (3d Cir. 2011).................................................................................................9

*Pennsylvania v. Ctr. Lane Partners, LLC*,
  2024 U.S. Dist. LEXIS 204338 (W.D. Pa. Oct. 31, 2024)...................................................9

*People v. Green*,
  5 N.Y.3d 538 (2005)............................................................................................................13

*People v. Reid*,
  69 N.Y.2d 469 (1987)..........................................................................................................13

*Pro. Fighters League, LLC v. Takeover Indus., Inc.*,
  770 F. Supp. 3d 718 (S.D.N.Y. 2025)..............................................................................6, 7

*Quaker Chem. Corp. v. Varga*,
  509 F. Supp. 2d 469 (E.D. Pa. 2007).................................................................................5

*Radian Guar., Inc. v. Bolen*,
  2014 U.S. Dist. LEXIS 83370 (E.D. Pa. June 19, 2014)..................................................12

*Ride the Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc.*,
  138 Fed. App'x. 431 (3d Cir. 2005)...................................................................................12

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009)...........................................................................................9

*W.S. Int'l, LLC v. M. Simon Zook Co.*,
  2011 U.S. Dist. LEXIS 51545 (E.D. Pa. May 12, 2011)...................................................12

*Walker v. O'Bannon*,
  487 F. Supp. 1151. (W.D. Pa. 1980)...................................................................................5

**R**ULES

Federal Rule of Civil Procedure 65 ....................................................................................................5, 6

**S**TATUTES

28 U.S.C.S. § 2201..................................................................................................................6

**INTRODUCTION**

Nokia's request is straightforward: it is asking the Court to order VoxLine to return property that VoxLine is withholding without any legal basis. In clear violation of its contractual commitments, VoxLine, LLC ("VoxLine") is refusing to return to Nokia of America Corporation ("Nokia") critical telecommunications infrastructure equipment (i) that does not belong to VoxLine; and (ii) that VoxLine has contractually agreed it cannot keep and that it must return. Nokia is one of the world's largest manufacturers of telecommunications infrastructure equipment, and it has an ongoing contract with T-Mobile, the US wireless carrier, to install cell phone towers ("T-Mobile Tower(s)"). The equipment that VoxLine is unlawfully keeping is custom-made for Nokia's T-Mobile work and is critical to Nokia's ability to continue to fulfill its obligations to T-Mobile. Because the equipment is bespoke, Nokia cannot readily go out into the marketplace and buy new equipment—doing so would take months and would irrevocably harm its relationship with T-Mobile. Consequently, each day that VoxLine refuses to return Nokia's equipment is a day that Nokia cannot fulfill its obligations to T-Mobile, bringing Nokia one step closer to irreparably harming its relationship with one of its largest customers.

VoxLine is well aware of this fact. It is not keeping the equipment because it has a right to do so, nor is it keeping the equipment because it intends to use it on another project (because the equipment is designed for specific T-Mobile Towers, it cannot be used on other projects). VoxLine is keeping Nokia's equipment to coerce Nokia into making additional payments to VoxLine that Nokia has no contractual obligation to make. But the law is clear: VoxLine has no contractual right to hold the equipment hostage in order to strongarm additional payments from Nokia, and the law does not permit the type of brazen self-help in which VoxLine is unapologetically engaging.

1

Nokia asks this Court to enter a Preliminary Injunction compelling VoxLine to return any T-Mobile asset in its possession, including but not limited to the items identified at Exhibits 3-5 to the Declaration of Paul Troy.

## FACTUAL BACKGROUND

Nokia is one of the world's largest manufacturers of telecommunications infrastructure equipment. VoxLine is a Philadelphia-based company that installs telecommunications equipment. On April 29, 2022, Nokia and VoxLine entered into the Frame Agreement, wherein Nokia hired VoxLine to serve as a subcontractor to assist in the construction of cellphone towers to be operated by T-Mobile. Exhibit A, Declaration of Paul Troy ("Troy Decl."), ¶ 8; *see also* Troy Decl. Ex. 1 ("Frame Agreement" or "FA").

The Frame Agreement has several key provisions. First, while VoxLine could be directed to store Nokia project materials and equipment ("Nokia Equipment"), Nokia retains complete title as between VoxLine and Nokia to Nokia Equipment:

> **Title to the Nokia Equipment shall at all times, as between the Supplier and Nokia, remain with Nokia (or the Customer, as relevant).** The Supplier shall upon the receipt of the Nokia Equipment issue an original warehouse receipt to Nokia evidencing Nokia's ownership rights to such Nokia Equipment. Each such warehouse receipt shall be signed by an authorized representative of the Supplier and such receipt shall accurately describe each item of Nokia Equipment and list the address of the warehouse, the date of issue of the warehouse receipt, the name of Nokia as the person to whom the Nokia Equipment is to be delivered, a statement that the Nokia Equipment shall be delivered to whatever location Nokia specifies and at the time Nokia specifies, and such other items as Nokia may reasonably require…

FA § 17.7 (emphasis added). Moreover, VoxLine must return Nokia Equipment to Nokia when directed by Nokia. FA § 17.11 ("The Supplier shall at its own cost and expense return any unused Nokia Equipment to the address specified by Nokia.").

2

The Frame Agreement also states that VoxLine has waived any right to seize Nokia Equipment, or even to place a lien (such as a mechanic's lien for outstanding debts) on Nokia Equipment:

> As a material inducement by the Supplier to cause Nokia to enter into this Agreement, the Supplier warrants that it does not possess, and will not file a lien (and, to the fullest extent permitted by applicable law, waives all rights to file a lien) against any of the Services, Work Results, Products, **Nokia Equipment** and/or Sites which are the subject of this Agreement, the Main Contract or any Project Agreement. **The Supplier hereby waives and releases all lien rights, whether statutory or constitutional, equitable, contractual or otherwise available under common law or equity**.

FA § 28.1 (emphasis added). So critical to the contract is this clause that VoxLine further agreed to indemnify Nokia for any losses, including attorneys' fees, if it breached Section 28.1:

> The Supplier shall indemnify, defend and hold Nokia harmless from and against any claims, actions, damages, losses, costs and expenses, including but not limited to attorneys' fees and costs, sustained or incurred by Nokia, (its Affiliates), any of its customers or subcontractors resulting from any breach of the warranty set out in Clause 28.1 above.

FA § 28.2. Finally, Nokia retained absolute power to delegate work to VoxLine and VoxLine cannot operate outside of Nokia's express orders. FA §§ 3.1, 3.7.

Nokia issued work orders to VoxLine for several T-Mobile Tower projects. Troy Decl. ¶ 9. Each T-Mobile Tower is unique, and thus each Tower requires specific Nokia Equipment (including the steel brackets, antennas and a site pad kit, discussed below) that is customized for that particular site. Troy Decl. ¶ 4. As a practical matter, that means most of the Nokia Equipment is only useful for the T-Mobile Tower for which it was ordered, and approximately 85% of the Nokia Equipment used to construct the T-Mobile Towers is unavailable in the general marketplace. Troy Decl. ¶¶ 5-6.

The T-Mobile Towers require Nokia Equipment such as steel brackets, antennas, and a site pad kit. Troy Decl. ¶ 5. The steel brackets mount on the tower and provide the base to hang the antennas. Troy Decl. ¶ 5. The steel brackets and mounts differ for each type of T-Mobile Tower

3

and are constructed exclusively to fit the outside of the exact Tower to which it will be attached. Troy Decl. ¶ 5. The antennas themselves are procured on a frequency specific to the T-Mobile Tower and cannot be transferred from one site to another. Troy Decl. ¶ 5. The site pad kit includes several foundational items, such as conduits, grounding rods, and elbows, used to transmit power from the ground (i.e., concrete) to the Tower itself. Troy Decl. ¶ 5.

Following performance issues with VoxLine's subcontracting services, Nokia informed VoxLine that it would not be issuing any more work orders to it for the T-Mobile Towers—a decision Nokia has the contractual right to make. Troy Decl. ¶ 10; FA § 3.1. Unhappy with this decision, however, VoxLine demanded additional compensation untethered to the terms of the Frame Agreement. Troy Decl. ¶ 11. On August 1, 2025, VoxLine wrote Nokia a letter and demanded Nokia compensate it for a variety of business expenses for which it alone bears the burden of paying. Troy Decl. Ex. 2 ("Aug. Ltr").

The letter goes on to inform Nokia that VoxLine was keeping all the Nokia Equipment in its possession, not because it had a contractual right to do so, but to pressure Nokia into paying VoxLine's business expenses that Nokia had no obligation to pay:

> Until all open issues are resolved — including outstanding payments, DCRs, equipment handling, and compensation for the above — Voxline will retain the Nokia equipment in our possession. This is not an act of hostility but is done to ensure that all obligations are resolved quickly and fairly.

Aug. Ltr. VoxLine's own words are telling. By attempting to disclaim the extortionate nature of its unilateral act, Voxline is effectively admitting that it knows full well what it is doing: "This is not an act of hostility *but" it is*.

More importantly, VoxLine's holding Nokia Equipment hostage is rendering it impossible for Nokia to build additional T-Mobile Towers. Troy Decl. ¶ 12. Under Nokia's agreement with T-Mobile, Nokia must complete new builds pursuant to a strict schedule and VoxLine is making

4

it impossible for Nokia to do so. Troy Decl. ¶¶ 3, 12. Given the customized nature of the Nokia Equipment, it would take 17 weeks for Nokia to replace what VoxLine is withholding, a delay so substantial as to make it impossible for Nokia to meet its contractual obligations on time. Troy Decl. ¶ 14. Nokia has already missed two start dates and is about to miss several more, all because VoxLine is refusing to return the Nokia Equipment. Troy Decl. ¶ 14. T-Mobile has already begun putting pressure on Nokia to return to work on the T-Mobile Towers so it can bring its new Towers on line. Nokia needs the Nokia Equipment to be immediately returned so it can complete its work on the T-Mobile Towers and not adversely impact its relationship with T-Mobile. Troy Decl. ¶¶ 16-17. Nokia thus seeks immediate injunctive relief from the Court ordering the return of the Nokia Equipment.

## LEGAL STANDARD

In exercising its discretion to issue a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a), this Court should consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest.

*Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 477 (E.D. Pa. 2007) (citations and quotations omitted). As long as notice has been provided to the other party, then the Court can order immediate preliminary relief under Rule 65(a). *Walker v. O'Bannon*, 487 F. Supp. 1151, 1153 n.6. (W.D. Pa. 1980) (discussing that an injunctive order "issued with notice and an adversary hearing may be treated as a preliminary injunction."). Here, Nokia will serve VoxLine's registered agent in conjunction with this filing and provide VoxLine with courtesy copies of these submissions via email.

**ARGUMENT**

All four factors for preliminary injunctive relief under Rule 65 are present here and weigh in favor of granting Nokia's request for a preliminary injunction that orders the immediate return of its Nokia Equipment by VoxLine.

**I.   NOKIA IS LIKELY TO SUCCEED ON THE MERITS**

Nokia moves for a preliminary injunction based on its declaratory judgment action seeking a declaration that VoxLine has no contractual right to the Nokia Equipment. Nokia asks the Court to order an immediate return of the Nokia Equipment. The clear and unequivocal terms of the Frame Agreement make clear that VoxLine has no title to Nokia Equipment, and that it must return Nokia Equipment when asked. And because the parties' intent can "be gathered from the four corners of the instrument," this issue presents a pure "question of law" appropriate for the Court's determination, as opposed to a factfinder.[1] *Dreisinger v. Teglasi*, 130 A.D.3d 524, 527 (N.Y. App. Div. 1st Dep't 2015).

In a declaratory judgment action, the Court "may declare the rights and other legal relations of any interested party seeking such declaration" and "[a]ny such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C.S. § 2201. Here, Nokia asks for the Court to declare, per the Frame Agreement, that VoxLine has no right to continue possessing the Nokia Equipment. "[T]he fundamental objective of contract interpretation is to give effect to the expressed intentions of the parties." *Pro. Fighters League, LLC v. Takeover Indus., Inc.*, 770 F. Supp. 3d 718, 723 (S.D.N.Y. 2025) (quoting *Lockheed Martin Corp. v. Retail*

---

[1] New York law governs disputes under the Frame Agreement. FA § 32.1.

*Holdings, N.V.*, 639 F.3d 63, 69 (2d Cir. 2011)). "[W]ords and phrases in a contract should be given their plain meaning," "the contract should be construed so as to give full meaning and effect to all of its provisions," and "[t]he contract should be read as a whole, with every part interpreted with reference to the whole…." *Id*. (quoting *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (first and second quotes) and *Flynn v. McGraw Hill LLC*, 120 F.4th 1157, 1165-66 (2d Cir. 2024) (third quote).

Based on the clear, unambiguous terms of the Frame Agreement, Nokia is likely to succeed in obtaining a declaratory judgment that VoxLine has no contractual right to the Nokia Equipment it is withholding. VoxLine obtained the Nokia Equipment for the T-Mobile Towers under the Frame Agreement's specified process for materials needed to complete work. *See* FA §§17.2-17.3 (VoxLine orders Nokia Equipment needed and Nokia delivers it to the VoxLine facility). This Nokia Equipment has been made with unique specifications and is not readily attainable on the market. Troy Decl. ¶¶ 4-6. VoxLine is responsible for covering the expenses of storing the Nokia Equipment during the duration of its work on the project (FA §§ 17.4-17.5) and agreed that it can only remove the Nokia Equipment "in accordance with the instructions of Nokia and shall not sell, lease, encumber, or otherwise dispose of the Nokia Equipment in any manner whatsoever." FA § 17.6. VoxLine's possession of the Nokia Equipment for purposes of completing its work, however, is not an ownership right—in fact, "[t]itle to the Nokia Equipment shall at all times, as between the Supplier and Nokia, *remain with Nokia*[]."[2] FA § 17.7. Moreover, VoxLine cannot

---

[2] An identical provision applies to Nokia Product-Testing and Tooling Equipment. Frame Agreement, § 18.4 ("Title to the Nokia Product-Testing and Tooling Equipment shall at all times ***remain with Nokia***").

7

file a lien on the Nokia Equipment and agreed to "return any unused Nokia Equipment" as specified. FA § 17.11, 28.1.

Based on the foregoing, Nokia retained absolute title to the Nokia Equipment and VoxLine had to return unused Nokia Equipment at its own expense. FA §§ 17.7, 17.11. The Nokia Equipment has never belonged to VoxLine and VoxLine's right to possess this property is significantly limited. It cannot file a lien on the Nokia Equipment. FA § 28.1. It cannot remove the Nokia Equipment outside the scope of the work it is performing. FA § 17.6. And it must return the Nokia Equipment when it is done with its work. FA § 17.11. For these reasons and based on the Frame Agreement, VoxLine does not have any contractual right to claim ownership of the Nokia Equipment, and thus Nokia is likely to succeed in obtaining a declaration that VoxLine is not entitled to the continued possession of the Nokia Equipment.

## II. NOKIA WILL BE IRREPARABLY INJURED IF VOXLINE IS NOT ORDERED TO RETURN THE NOKIA EQUIPMENT

Nokia is already suffering irreparable injury following VoxLine's refusal to return the Nokia Equipment, and this injury will only continue to grow if the Nokia Equipment is not promptly returned. The Nokia Equipment VoxLine continues to improperly possess is necessary for Nokia's work on the T-Mobile Towers. Troy Decl. ¶ 12. Nokia's work on the T-Mobile Towers arises from its multi-million dollar contract with T-Mobile. Troy Decl. ¶ 7. For the work required in the T-Mobile agreement, Nokia be able to access and use the Nokia Equipment. Troy Decl. ¶ 14. There is no other source for obtaining the Nokia Equipment under these time constraints; replacements for the Nokia Equipment are not readily available in the general marketplace. Troy Decl. ¶¶ 5, 14. The Nokia Equipment has to be made to the specifications of each T-Mobile Tower, a process that would take at least 17-weeks. Troy Decl. ¶ 14. Such a delay would inhibit Nokia from reaching its obligations to T-Mobile and delay the T-Mobile Towers

from becoming operable.  Troy Decl. ¶¶ 14-16.; *Green Stripe, Inc. v. Berny's Internacionale, S.A. de C.V.*, 159 F. Supp. 2d 51, 57 (E.D. Pa. 2001) (finding irreparable harm based on threats to a "unique" product that had no "substitute on the market"); *Pennsylvania v. Ctr. Lane Partners, LLC*, 2024 U.S. Dist. LEXIS 204338, at *2 (W.D. Pa. Oct. 31, 2024) (finding irreparable harm and enjoining behavior that "dismantle[s] and remove[s]" "specialized equipment" with the effect of "causing interruptions in operations and output"); *cf. also Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 256 (3d Cir. 2011) (approving that there could be irreparable injury "where interference with property rights caused loss of unique opportunities" (citing *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).

Further, Nokia's failure to complete the T-Mobile Towers project in a reliable and timely manner would most certainly impact its relationship with T-Mobile, who values contractors that complete projects in accord with their contractual obligations and who is already putting pressure on Nokia regarding the T-Mobile Towers projects.  Troy Decl. ¶ 15-16.  Nokia greatly values T-Mobile as one of its largest customers.  Troy Decl. ¶ 7.  Such a multi-million-dollar relationship is not replaceable in a competitive marketplace.  Troy Decl. ¶ 7. Loss of hard-won market share and Nokia's reputation as a reliable partner are classic forms of irreparable harm. *See Complex Systems, Inc. v. ABN AMRO Bank, N.V.*, 2014 U.S. Dist. LEXIS 64467, at *37-38 (S.D.N.Y. May 9, 2014) (irreparable harm can consist of "loss of current or future market share" or "loss of goodwill or reputation").

If VoxLine is allowed to continue with its refusal to hand over the Nokia Equipment, Nokia will not be able to promptly continue its work on the T-Mobile Towers.  The harm that Nokia is suffering and would continue to suffer cannot be remedied by monetary damages, and preliminary injunctive relief is appropriate because of such irreparable harm. *EUSA Pharma (US), Inc. v.*

9

*Innocoll Pharms. Ltd.*, 594 F. Supp. 2d 570, 582 (E.D. Pa. 2009) (recognizing "irreparable harm by losing 'a unique, non-replicable business opportunity.'" (quoting *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 163 (3d Cir. 1999))); *Green Stripe*, 159 F. Supp. 2d at 57 (finding an "inability" to fulfill customer promises constitutes irreparable harm as a threat to "reputation and good will in the [] industry"); *22nd Century Techs., Inc. v. iLabs, Inc.*, 2022 U.S. Dist. LEXIS 48389, at *30 (D.N.J. Mar. 18, 2022) (citing to "the potential harm [of] the possibility of Plaintiff losing [] loss of competitive advantage in the business world"); *cf. also Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of good will.").

### III. AN ORDER REQUIRING THE RETURN OF THE NOKIA EQUIPMENT WILL NOT HARM VOXLINE AND WOULD BENEFIT A THIRD PARTY, T-MOBILE.

VoxLine, conversely, will suffer nothing if it is ordered to return the Nokia Equipment. As discussed above, VoxLine has no legal right to keep possession of the Nokia Equipment and withhold its return following Nokia's demand. *See* Section I *supra*. As between Nokia and VoxLine, the Nokia Equipment unequivocally and absolutely belongs to Nokia. FA § 17.7. VoxLine cannot defend withholding the return of this Nokia Equipment, as the Frame Agreement expressly requires it. FA § 17.11. VoxLine suffers no harm by having to return property in which it has no legal right, and in doing so would remediate a breach of the parties agreed-upon terms.

The only reason VoxLine has provided for keeping the Nokia Equipment is because it perceives there to be "open issues" of "outstanding payments, DCRs, equipment handling, and compensation" that need to be resolved. *See* Aug. Ltr. VoxLine states that it is holding Nokia's Equipment "to ensure that all obligations are resolved quickly and fairly." Aug. Ltr. VoxLine's position cannot be weighed as harm because, first, VoxLine withholding Nokia's Equipment on this basis is essentially a ***mechanic's lien*** that VoxLine waived any right to impose as part of the

10

Frame Agreement.  FA § 28.1 (waiving "all lien rights, whether statutory or constitutional, equitable, contractual or otherwise available under common law or equity").  Second, as discussed below, this is a self-help remedy that is not permitted under the law.  *Int'l Bhd. of Boilermakers v. Szoke*, 1987 U.S. Dist. LEXIS 14208, at *20 (E.D. Pa. May 29, 1987) (rejecting argument that a party "is entitled to take whatever self-help remedies it desires" when dissatisfied with an agreement and "the public interest is served by disallowing" such behavior).  The Court stopping VoxLine from coercing Nokia into paying ransom money for the return of its own property is not harmful to VoxLine, legally or equitably.

Moreover, the Nokia Equipment is of no practical utility to VoxLine because it can only be used for T-Mobile projects on which VoxLine is not working.  Troy Decl. ¶ 13. In other words, the Nokia Equipment has no value to VoxLine as *infrastructure equipment*, its sole value to VoxLine is as a coercive threat – a Sword of Damocles hung over Nokia's head to induce it to pay money it does not owe.

There is no harm to VoxLine by being ordered to return the Nokia Equipment immediately.  And such order certainly does not outweigh the irreparable harm Nokia is suffering and would continue to suffer if it could not take possession of its property to complete work on the T-Mobile Towers.  *Kos Pharms.*, 369 F.3d at 728 ("[W]hen the potential harm to each party is weighed, a party can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issuance of an injunction upon itself." (second quote in original) (internal quotations omitted)).

Finally, in weighing the harms for this preliminary relief, the immediate return of the Nokia Equipment serves a third-party interest here: T-Mobile.  T-Mobile has an interest in its Towers being built as Nokia agreed to do.  Troy Decl. ¶¶ 15-16.  In order for this work to be completed, however, Nokia must have possession and use of the Nokia Equipment, specialized and created

for the T-Mobile Towers projects themselves. Troy Decl. ¶ 12. The interest of T-Mobile as a third party coupled with the irreparable harm Nokia would suffer to its relationship and contractual obligations with T-Mobile most definitely outweigh VoxLine's narrow interest in this matter. *Radian Guar., Inc. v. Bolen*, 2014 U.S. Dist. LEXIS 83370, at *36 (E.D. Pa. June 19, 2014) (granting preliminary injunction to enforce an agreement when defendant would not be adversely impacted from the injunction based on safeguards in place to protect defendant's interests).

## IV. THE PUBLIC INTEREST WOULD BE SERVED BY THE IMMEDIATE RETURN OF THE NOKIA EQUIPMENT

Finally, even in this dispute between private parties, the public interest is served by the Court ordering the immediate return of the Nokia Equipment to Nokia so it can continue work on the T-Mobile Towers. "[T]he public interest is best served when property rights are settled. The public has a strong interest in seeing that property rights are respected." *W.S. Int'l, LLC v. M. Simon Zook Co.*, 2011 U.S. Dist. LEXIS 51545, at *17 (E.D. Pa. May 12, 2011) (citing *Ride the Ducks of Philadelphia, LLC v. Duck Boat Tours, Inc.*, 138 Fed. App'x. 431, 434-435 (3d Cir. 2005)). When a defendant has no right to the property and a claimant does, then "the best interest of the public [is] that the property be returned to its rightful owner." *Id*; *Ride The Ducks,* 138 F. App'x at 435 ("[T]he public would be well-served by a rule enforcing the rights conferred by lawful contracts for the use of real property"). New York law likewise recognizes "the public interest" in "protecting valuable property rights" and "enforcing freely given contractual promises." *HMS Holdings Corp. v. Arendt*, 18 N.Y.S.3d 579 (Sup. Ct. 2015). It also recognizes the public's interest in returning property illegally withheld to its rightful owner. *See, e.g, Commodity Futures Trading Comm'n v. Walsh*, 17 N.Y.3d 162, 172 (2011) (referring to the "public policy considerations favoring the return of stolen property to its rightful owner").

Public policy would not be served by allowing parties to a contract, unhappy with the terms they agreed upon, to engage in self-help remedies expressly contrary to the terms of the parties' agreement. *Int'l Bhd. of Boilermakers*, 1987 U.S. Dist. LEXIS 14208, at *20 (rejecting that a party "is entitled to take whatever self-help remedies it desires" when dissatisfied with an agreement and "the public interest is served by disallowing" such behavior); *Bernstein v. Goldsmith*, 2006 U.S. Dist. LEXIS 36599, at *22 (D.N.J. June 5, 2006) ("[The] public interest [] disfavors Plaintiffs' self-help remedies."); *Miller v. Mott (In re Team Sys. Int'l, LLC)*, 2023 Bankr. LEXIS 229, at *36 (Bankr. D. Del. Jan. 31, 2023) (recognizing the "public interest is served" by relief that "maintains integrity in financial and business dealings"; *ADP, LLC v. Jacobs*, 2015 U.S. Dist. LEXIS 103207, at *20 (D.N.J. Aug. 5, 2015) ("[The public's] interest is also furthered by protection of private contractual rights."); *Great Caesars Ghost LLC v. Unachukwu*, 2020 U.S. Dist. LEXIS 83115, at *10 (D.N.J. May 12, 2020) ("[T]he public has an interest in the protection of private contractual rights."). Likewise, in New York, the bounds of proper self-help remedies are narrow, and not to be expanded. *Millner v. Rochester Lumber Co.*, 941 N.Y.S.2d 539, 539 (Sup. Ct. 2007) ("There are 'policy considerations against expanding the area of permissible self-help[.]'" (quoting *People v. Reid*, 69 N.Y.2d 469, 476 (1987))); *cf. also People v. Green*, 5 N.Y.3d 538, 540 (2005) ("[P]ublic policy considerations militate against encouraging the use of forcible self-help to recover property[.]").

Finally, public policy supports Nokia's position here because it would be the most efficient use of the Nokia Equipment. To be sure, VoxLine has no legal right to, or practical ability to use, the Nokia Equipment. It cannot even remove the Nokia Equipment for its own purposes without breaching its obligations under the Frame Agreement. FA § 17.6 ("[VoxLine] shall remove the Nokia Equipment from its warehousing facilities only in accordance with the instructions of Nokia

13

and shall not sell, lease, encumber, or otherwise dispose of the Nokia Equipment in any manner whatsoever."). Nokia, conversely, has an interest in the immediate use of Nokia Equipment specifically designed for the work on the T-Mobile Towers. *See* Section II *supra*. Returning the property to its rightful owner and to the only party with any interest in its utility serves the public policy of efficient use of property. *Leonard v. Hotel Majestic Co.*, 40 N.Y.S. 1044, 1045 (Sup. Ct. 1896) ("The interests of public policy require the free and untrammeled use of property for its reasonable incidental purposes."). And it goes without saying that allowing VoxLine to hold Nokia's property hostage as part of a payment dispute—when it specifically agreed not to do so as part of the Frame Agreements—serves no interests except VoxLine's own.

## CONCLUSION

Nokia respectfully requests that the Court grant Nokia's motion for preliminary injunction and order, in accordance with the Frame Agreement, VoxLine immediately return its Nokia Equipment as specified in Exhibits 3-5 of the Troy Declaration.

Dated: August 12, 2025.                    Respectfully submitted,

                                              By: */s/ Leigh M. Skipper*
**DUANE MORRIS LLP**
Leigh M. Skipper
James H. Steigerwald
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: 215-979-1000
LMSkipper@duanemorris.com
JHSteigerwald@duanemorris.com

**ALSTON & BIRD LLP**
Matthew D. Richardson (*pro hac vice forthcoming*)
Bryan W. Lutz (*pro hac vice forthcoming*)
1201 West Peachtree Street
Atlanta, GA 30309
Telephone: (404) 881-7000
matt.richardson@alston.com
bryan.lutz@alston.com

***Attorneys for Plaintiff Nokia of America Corporation***